UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SANTOS F. BONILLA,** | No. 10-Cv-224-RMU |
| vs. | |
| **SIMON WAINWRIGHT, WARDEN.** | |

### PETITIONER'S OPPOSITON TO GOVERNMENT'S MOTION TO DISMISS PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Santos F. Bonilla, through undersigned counsel, opposes the Government's Motion To Dismiss on procedural and substantive grounds. His Petition was properly filed pursuant to 28 U.S.C. § 2241, rather than 28 U.S.C. § 2254. He has made a more than sufficient showing that rulings of the D.C. Court of Appeals in his direct appeal and the D.C. Superior Court on motions pursuant to D.C. Crim. R. 33 and D.C. Code § 23-110 violated his Fifth and Sixth Amendment rights. Furthermore, he has exhausted all available remedies in the District of Columbia Courts in his 12-year effort to vindicate his claim that he is actually innocent of the charges for which he was convicted.

#### THIS COURT CANNOT RECHARACTERIZE THE PETITION AS ONE FILED PURSUANT TO 28 U.S.C. § 2254

The government erroneously argues that Mr. Bonilla's Petition "should be construed as a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, because the petitioner is challenging the legality of his conviction in Superior Court Case No. F-2332-98, and not the conditions of his confinement." Motion, 1 n. 1.

By its terms § 2254 applies only to "person(s) in custody pursuant to the judgment of a State court." Because neither the D.C. Court of Appeals nor the D.C. Superior Court is a "State court," Mr. Bonilla could not file his Petition pursuant to § 2254.[1]

---

[1] Neither *Brennan v. Wall*, 100 Fed. Appx. 4 (1st Cir. 2004), nor *Coady v. United States*, 251 F.3d 4380 (3d Cir. 2001), supports the government's argument because *Brennan* addressed a petition filed by defendants convicted in state court and *Coady* dealt with a petition filed by a federal defendant.

Its federal analog, 28 U.S.C. § 2255, applies to "prisoner(s) in custody under sentence of a court established by Act of Congress." The D.C. courts were created by Congress in the District of Columbia Court Reform and Criminal Procedure Act of 1970, 84 Stat. 508. *See Swain v. Pressley*, 430 U.S. 372, 376 (1977). But because "§ 2255 was intended to substitute a different forum and a different procedure for collateral review of federal convictions," Mr. Bonilla could not file his petition under § 2255, and the government does not disagree. *Swain, supra*, at 378.

A challenge to the legality of the conviction for which a criminal defendant continues to be imprisoned is a challenge to his confinement, and the government cites no contrary precedent. Nonetheless, relying on *Coady, supra*, at 485, the government appears to equate the term confinement with the execution of a sentence, not its imposition. Nothing in § 2241 supports that narrow interpretation.

In *Coady, supra*, the Third Circuit said § 2255 "is expressly limited to challenges to the validity of the petitioner's sentence," and "Section 2241 is the only statute that confers *habeas* jurisdiction to hear the petition of a federal prisoner who is challenging … the execution of his sentence." Applying the "well-established canon of statutory construction that when two statutes cover the same situation, the more specific statute takes precedence," the Court said a federal prisoner attacking his conviction and sentence must proceed under § 2255, rather than § 2241. Because § 2254 "confers broad jurisdiction [on federal courts] to hear the petition of any state prisoner 'in custody in violation of federal law.' … it is unnecessary [for state prisoners] to proceed under the more general Section 2241…." *Coady, supra*, at 486.

Neither § 2254 nor § 2255 applies to individuals, like Mr. Bonilla, challenging the constitutionality of convictions and sentences in D.C. Superior Court. Therefore, Mr. Bonilla must proceed under § 2241. For the same reason this Court cannot recharacterize his Petition as one filed pursuant to § 2254.

**Bonilla, Santos F. v. Simon Wainwright, Warden, 10-Cv-224-RMU — Page 2**

**EVEN IF THE COURT TREATS MR. BONILLA'S PETITION AS ONE COLLATERALLY ATTACKING A "STATE" CONVICTION HE HAS MET THE APPLICABLE PLEADING REQUIREMENTS AND HIS PETITION CANNOT BE SUMMARILY DISMISSED**

Mr. Bonilla is not a state prisoner who may proceed under § 2254. But he agrees with the government, the U.S. Supreme Court and the D.C. Circuit that when a convicted D.C. defendant asserts his actual innocence and that his conviction was obtained in violation of the U.S. Constitution, the District Court should view him as it would any person convicted in the courts of a state or U.S. territory.

The Supreme Court said the

> Court Reform and Criminal Procedure Act of 1970 … transfer[red] general jurisdiction over local matters to the Superior Court of the District of Columbia and all appeals from [the D.C. Circuit] to the District of Columbia Court of Appeals …, thus creating a system of courts analogous to those found in the States. "This transfer will bring the jurisdiction of the U.S. Courts in the District of Columbia in line with the jurisdiction exercised by the Federal courts in the several States, and will give the local courts jurisdiction over all purely local matters."

*Swain, supra*, at 376 n. 4 (quoting S. Rep. No. 91-405, p. 5 (1969)). *See, also, Banks v. Smith*, 377 F. Supp. 2$^d$ 92, 94 (D.D.C. 2005)("The D.C. Circuit has consistently held that when considering a writ of *habeas corpus* a prisoner of the District of Columbia is considered a State prisoner, when the prisoner is held under a conviction of the D.C. Superior Court."); *Welch v. Brown*, 541 F. Supp. 259, 261 (D.D.C. 1982)("the fact remains that his claim for relief is, in essence, an attack upon the judgment of a state court….").

In the Court Reform Act Congress reinforced the federal/state distinction regarding civil cases, including *habeas* proceedings, stating that "[f]or the purposes of this chapter, references to laws of the United States or Acts of Congress do not include laws applicable exclusively to the District of Columbia." 28 U.S.C. § 1366. "As a result of the Act, the United States District Court for the District of Columbia has jurisdiction similar to other United States district courts." *Police Officers' Guild, etc. v. Washington*, 369 F. Supp. 543, 548 (D.D.C. 1973)(citing H.R. Rep. No. 91-907, 91st Cong., 2$^d$ Sess. 34; Senate Comm. on the Dist. of Col., Statement of the Managers on the Part of the Senate Regarding the Conference Action Upopon S. 2601, 91st Cong., 2$^d$ Sess.

4 (Comm. Print 1970)).

The Supreme Court recognized that the D.C. courts created by the Court Reform Act are not Article III courts, noting that in 1949 Congress added the phrase "Court established by Act of Congress" to § 2255, replacing the phrase "Court of the United States." *Swain, supra*, at 382 n. 15. "This was done to make 'it clear that the section is applicable in the district courts in the Territories and possessions' " even though Congress created the territorial courts under Art. I of the U.S. Constitution. *Id.* (citing H.R. Rep. No. 352, 81st Cong., 1st Sess., 18 (1949)).

It acknowledged that the relationship between the District of Columbia courts and the federal courts differed from the relationship between territorial courts and the federal courts in one respect. After appeal, defendants convicted in territorial courts could seek review in the federal circuit with supervisory authority over the territory. *Swain, supra*.

In Puerto Rico "[a]ll judicial process shall run in the name of 'United States of America, ss, the President of the United States,' and all penal or criminal prosecutions in the local courts shall be conducted in the name and by the authority of 'The People of Porto Rico [Puerto Rico]…." 48 U.S.C. § 874. Under 48 U.S.C. § 872, "[t]he supreme and district courts of Porto Rico [Puerto Rico] and the respective judges thereof may grant writs of *habeas corpus* in all cases in which the same are grantable by the judges of the district courts of the United States, and the district courts may grant writs of mandamus in all proper cases." Nonetheless, defendants convicted in the Courts of Puerto Rico challenge their continuing confinement in the U.S. District Court under § 2254. *See, e.g., Gonzalez-Fuentes v. Molina*, 607 F.3$^d$ 864, 875 – 6 (1st Cir. 2010); *Velez v. Schmer*, 724 F.2$^d$ 249, 252 – 3 (1st Cir. 1984);

Since the Supreme Court decided *Swain* Congress has changed the relationships territorial courts have with their respective federal district and appellate courts. In 1982 it made 28 U.S.C. §§ 452 – 459 and 462 applicable "to each court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States, and the

judges thereof."[2] 28 U.S.C. § 460(a). Amendments enacted in 1984 that specifically affect criminal defendants convicted in territorial courts were included in P.L. 98-454, Title IX, 98 Stat. 1745.[3]

For example, Congress amended § 23 of the Revised Organic Act of the Virgin Islands to state,

> The relations between the courts established by the Constitution or laws of the United States and the courts established by local law with respect to appeals, certiorari, removal of causes, the issuance of writs of *habeas corpus*, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings . . . .

48 U.S.C. § 1613. It amended § 24(b) of the Revised Organic Act to read,

> Where appropriate, the provisions of part II of Title 18 and of Title 28, and, notwithstanding the provisions of rule 7(a) and of rule 54(a) of the Federal Rules of Criminal Procedure relating to the requirement of indictment and to the prosecution of criminal offenses in the Virgin Islands by information, respectively, the rules of practice heretofore or hereafter promulgated and made effective by the Congress or the Supreme Court of the United States pursuant to Titles 11, 18, and 28 shall apply to the district court and appeals therefrom . . . .

48 U.S.C. § 1614(b).

After these amendments the Third Circuit held that

> § 2254 of Title 28 applies to the District Court of the Virgin Islands so as to confer jurisdiction upon it to entertain *habeas corpus* petitions from those in custody pursuant to a judgment of the Territorial Court…. [I]t is "appropriate" under § 24(b) of the Revised Organic Act to apply § 2254 to the District Court of the Virgin Islands where the petitioner is in custody serving a sentence of the Territorial Court.

*Walker v. Virgin Islands*, 230 F.3d 82, 87 (3d Cir. 2000).

Similarly, in 1984 Congress amended the Organic Law of Guam to read

> The relations between the courts established by the Constitution or laws of the United States and the local courts of Guam with respect to appeals, certiorari, removal of causes,

---

[2] This amendment did not convert district courts in territories from Art. I courts to Art. III courts. *See, e.g., Aronson v. Ambrose*, 479 F.2d 75 (3d Cir. 1973)(Virgin Islands District Court judges appointed to 10-year terms by President with advice and consent of Senate).

[3] Offenses committed on federal defense sites in Micronesia, the Marshall Islands and Palau are prosecuted in U.S. District Court under federal law.

> the issuance of writs of *habeas corpus*, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings.

48 U.S.C. § 1424-2. In addition,

> Where appropriate, the provisions of part II of title 18 and of title 28, United States Code, and notwithstanding the provision in rule 54(a) Federal Rules of Criminal Procedure relating to the prosecution of criminal offenses on Guam by information, the rules of practice and procedure heretofore or hereafter promulgated and made effective by the Congress or the Supreme Court of the United States pursuant to titles 11, 18, and 28, United States Code, shall apply to the District Court of Guam and appeals therefrom; except that the terms, "Attorney for the government" and "United States attorney", as used in the Federal Rules of Criminal Procedure, shall, when applicable to cases arising under the laws of Guam, including the Guam Territorial income tax, mean the Attorney General of Guam or such other person or persons as may be authorized by the laws of Guam to act therein.

48 U.S.C. § 1424-4.

> In the Northern Mariana Islands,
>
> (a) The relations between the courts established by the Constitution or laws of the United States and the courts of the Northern Mariana Islands with respect to appeals, certiorari, removal of causes, the issuance of writs of *habeas corpus*, and other matter or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings, except as otherwise provided in article IV of the covenant….
>
> (b) Those portions of title 28 of the United States Code which apply to Guam or the District Court of Guam shall be applicable to the Northern Mariana Islands or the District Court for the Northern Mariana Islands, respectively, except as otherwise provided in article IV of the covenant. The district court established by this Act shall be a district court as that term is used in section 3006A of title 18, United States Code.

48 U.S.C. § 1824.

In short, the Supreme Court decided *Swain* on the premise that Congress applied federal *habeas* jurisdiction to defendants in the District of Columbia no differently than to defendants convicted in territorial courts. Twenty-six years later that premise no longer applies. Criminal defendants convicted under territorial law can collaterally attack their convictions in federal district court if

> (A) the applicant has exhausted the remedies available in the courts of the [Territory]; or
>
> (B)(i) there is an absence of available [Territorial] corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

§ 2254(b)(1). When the territorial court adjudicated the issues raised on the merits, the defendant must plead that territorial proceedings

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State proceeding.

§ 2254(d).

D.C. defendants have become a class unto themselves. They are the only defendants convicted in "state" court who must meet the much more stringent § 2255(e) standard applied to federal defendants filing a second or successive petition. Because they are required to demonstrate both that they have exhausted state remedies and that the § 23-110 remedy was unavailable or inadequate, they are the only "state" defendants virtually deprived of the opportunity for a federal court to rule on whether their convictions resulted from violations of the U.S. Constitution.

### APPLICATION OF THE § 2255 STANDARD VIOLATES THE FIFTH AMENDMENT RIGHT TO EQUAL PROTECTION OF THE LAWS

The D.C. Circuit has often held that "Congress exercises full plenary power over District affairs," and "can use this power to serve national as well as local ends." *United States v. Thompson*, 452 F.2$^d$ 1333, 1338 (D.C. Cir. 1971)(citations omitted). But those propositions do not give "Congress [] plenary power in the District [to] ignore the Constitution." *Id.*

> One of the rights which the Constitution guarantees District residents, in common with all residents of the United States, is the right not to be arbitrarily singled out for special treatment not accorded to others similarly situated. Thus it is no response to contend … that Congress was exercising its "plenary powers" when it created such an irrational classification.

*Id.*

**Bonilla, Santos F. v. Simon Wainwright, Warden, 10-Cv-224-RMU — Page 7**

The Supreme Court in *Swain, supra*, at 382 – 3, rejected the argument that D.C. defendants were not denied equal protection merely because judges of the Superior Court and D.C. Court of Appeals are not Art. III judges with life tenure. Petitioner Bonilla is not making that argument.

Similarly, the *Swain* Court held that § 23-110(g) did not deprive D.C. defendants of equal protection because their counterparts convicted in territorial courts had been subject to the same standard since 1949. *Id.* at 382 n. 15. As noted above, in 1984 Congress expressly rejected the proposition that defendants convicted in territorial court should have to meet the § 2255(e) standard.

Furthermore, the issue in Mr. Bonilla's case is not, as the Supreme Court stated in *Swain, supra*, at 383, whether "judges of the Superior Court of the District of Columbia must be presumed competent to decide all issues, including constitutional issues, that routinely arise in the trial of criminal cases." D.C. Superior Court judges are no more nor less competent than their counterparts in state courts, whether elected or appointed, and territorial courts.

Even though state and territorial judges are competent to resolve federal constitutional issues, defendants convicted in state and territorial courts, after exhausting state post-conviction remedies, are entitled to petition a federal court to review their cases. They are not required as a prerequisite to demonstrate that state post-conviction procedures are inadequate, and there is no rational basis for imposing such a burden on D.C. defendants.

In *Thompson, supra*, at 1339, the D.C. Circuit noted that Congress might have intended the Court Reform Act as an experiment, "and that if it operated successfully in the District it would subsequently be enacted for all federal jurisdictions." Before 1984, that logic might have been applied to § 23-110(g). But the experiment must have been a failure because in 1984 Congress took the opposite tack, it lowered the bar for defendants convicted in territorial courts.

In *United States v. Cohen*, 733 F.2$^d$ 128, 132 n. 10 (D.C. Cir. 1984), then Judge Scalia recognized that Congress operates in two different capacities with respect to the District of Columbia, as a national sovereign and as a local sovereign. In its capacity as local sovereign

Congress may adopt a special rule "with beneficial local effects," even though it has, in its capacity as national sovereign, barred the states from adopting similar rules. *Id.* For purposes of equal protection analysis, adoption of the special rule is "full and complete evidence" of the existence of a local interest, he said. *Id.*

The contrary is not true, however. Where Congress as national sovereign has established a rule applicable to residents of all states and territories, in this case that defendants convicted in state and territorial courts may petition under the § 2254 standard for federal judicial review of their convictions, enactment of § 23-110(g) imposing a greater burden on D.C. defendants cannot be presumed to have "beneficial local effects" and is not "full and complete evidence" that the statute serves a local interest.

One rationale for the modern codification of federal *habeas* jurisdiction in § 2255 was "a great increase in the number of applications … filed in federal courts by state and federal prisoners" including the District of Columbia. *United States v. Hayman*, 342 U.S. 205, 212 & 213 n. 13 (1938). Because § 2255 petitions generally must be filed in the district in which the defendant is incarcerated, the volume of federal *habeas* petitions imposed an inordinate burden in the few "District Courts in whose territorial jurisdiction major federal penal institutions are located…." *Id.* at 213.

Until the late 1990s, when the federal Bureau of Prisons assumed responsibility for most defendants convicted in D.C. Superior Court and serving prison terms at Lorton, this Court bore the burden of reviewing nearly all *habeas* petitions filed by D.C. inmates. *See, e.g., Ahrens v. Clark*, 335 U.S. 188, 207 (1948)(citing *Sanders v. Allen*, 100 F.2$^d$ 717 (D.C. Cir. 1938)). In 1970 Congress might have considered the need to alleviate that burden a rational basis for applying the more stringent § 2255(e) standard when D.C. defendants sought federal habeas review.

Subsequently, convicted D.C. inmates, including Mr. Bonilla, were transferred to federal prisons throughout the United States. As a general rule "the only proper defendant in a *habeas* case is the petitioner's 'immediate custodian' … the warden of the facility in which the petitioner

is incarcerated" when the petition is filed.[4] *Fletcher v. Reilly*, 433 F.3d 867, 875 (D.C. Cir. 2006). Because the vast majority of D.C. defendants now are incarcerated elsewhere, reducing this Court's case load no longer justifies treating convicted D.C. defendants differently.

Another rationale for limiting federal *habeas* review is the government's interest in finality of criminal judgments. *See, e.g., Panetti v. Quarterman*, 168 L. Ed. 2d 662, 668 (2007). This goal is accomplished in two ways. The petition must be filed within one year after the state or federal judgment became final.[5] 28 U.S.C. § 2244(d). A state defendant seeking to file a second or subsequent § 2254 petition, like his federal counterpart under § 2255, must comply with more stringent pleading and procedural requirements. § 2244(b).

There is no rational basis for requiring only convicted D.C. defendants collaterally attacking their conviction in federal court for the first time to overcome barriers Congress erected to discourage successive petitions by all other defendants convicted in federal, state and territorial courts. The District of Columbia's interest in comity and finality is no greater than that of any state or territory.

Section 23-110(g) deprives convicted D.C. defendants of their right under the Fifth Amendment to equal protection of the laws, and no rational basis supports application of the § 2255(e) standard to them.

Having twice collaterally attacked his conviction in D.C. Superior Court on grounds that the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), having raised those issues and other Fifth and Sixth Amendment violations on direct appeal, having unsuccessfully petitioned the D.C. Court of Appeals for rehearing and rehearing *en banc*, and

---

[4] Mr. Bonilla filed his Petition while he was housed at the D.C. Jail and he named the Jail Warden as defendant. "When the Government moves a *habeas* petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Fletcher, supra* (quoting *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238 (D.C. Cir. 2004)).

[5] The U.S. Supreme Court denied Mr. Bonilla's Petition for Writ of Certiorari October 20, 2009 and he lodged his Petition pursuant to § 2241 January 10, 2010.

having been denied review by the U.S. Supreme Court, Mr. Bonilla has exhausted all remedies available in the courts of the District of Columbia. Furthermore, his Petition alleges with great specificity and references to the record that proceedings in the D.C. courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States…." § 2254(d)

Therefore, even if the pleading standards of § 2254 are applied to Mr. Bonilla's case he has amply satisfied them and the Court should not dismiss his Petition summarily.

## CONCLUSION

For the reasons stated above and any others that may appear to the Court, Petitioner Santos F. Bonilla respectfully requests that the Court deny the government's motion to dismiss the Petition, vacate his conviction and sentence, and release him from custody.

Respectfully submitted,

Robert S Becker, Esq.
D.C. Bar No. 370482
PMB #155
5505 Connecticut Avenue, N.W.
Washington, D.C. 20015
(202) 364-8013
Attorney for Santos F. Bonilla
(*Appointed by the Court*)

## CERTIFICATE OF SERVICE

I, Robert S Becker, counsel for Santos F. Bonilla, certify that on December 10, 2010 Asst. U.S. Attorney Mary Ann Snow was a registered user of the Court's CM/ECF system and will receive service electronically.

Robert S Becker